# EXHIBIT E

# Case No. 1:24-cv-02428-JDB



June 01, 2022

LASSMAN LAW+POLICY
SCOTT M. LASSMAN
1717 K Street, NW Suite 900
Washington  DC  20006  US

In Reply refer to
FOIA Control #:
2022-3968

Requester reference:

Dear Requester:

The Food and Drug Administration (FDA) has received your Freedom of Information Act (FOIA) request for records regarding:

A copy of all documents and other memoranda, including but not limited to those prepared by the CDER Exclusivity Board, documenting the Agency's decision whether to award three-year exclusivity to Tyvaso DPI (treprostinil) inhalation powder (NDA 214324).

We will respond as soon as possible and may charge you a fee for processing your request. If your informational needs change, and you no longer need the requested records, please contact us to cancel your request, as charges may be incurred once processing of your request has begun. For more information on processing fees, please see http://www.fda.gov/RegulatoryInformation/FOI/FOIAFees/default.htm.

Due to an increase in the number of incoming requests, we may be unable to comply with the twenty-working-day time limit in this case, as well as the ten additional days provided by the FOIA. The actual processing time will depend on the complexity of your request and whether sensitive records, voluminous records, extensive search, and/or consultation with other HHS components or other executive branch agencies are involved. Please note that requests for medical device approval records (e.g. 510K, PMA, DEN) may take up to 18 to 24 months to process.

If you have any questions about your request, please call Rochelle A. Coleman,  Information Technician, at (301) 796-8982 or write to us at:
Food and Drug Administration
Division of Freedom of Information
5630 Fishers Lane, Room 1035
Rockville, MD 20857

If you call or write, use the FOIA control number provided above which will help us to answer your questions more quickly.

You also have the right to seek dispute resolution services from:

| Office of Government Information Services | and/or | FDA FOIA Public Liaison |
|---|---|---|
| National Archives and Administration | | Office of the Executive Secretariat |
| 8601 Adelphi Road – OGIS | | US Food Administration |
| College Park, MD 20740-6001 | | 5630 Fishers Lane, Room 1050 |
| Telephone:202-741-5770 | | Email: FDAFOIA@fda.hhs.gov |
| Toll-Free: 1-877-684-6448 | | |
| Email:ogis@nara.gov | | |
| Fax: 202-741-5769 | | |

Sincerely,

SARAH KOTLER
Director



August 17, 2022

In Response Refer to File: **2022-3968**

Scott M. Lassman
Lassman Law & Policy
1717 K Street, NW Suite 900
Washington, DC 20006

Dear Mr. Lassman,

This is in response to your Freedom of Information Act request dated June 1, 2022, in which you requested a copy of all documents and other memoranda, including but not limited to those prepared by the CDER Exclusivity Board, documenting the Agency's decision whether to award three-year exclusivity to Tyvaso DPI (treprostinil) inhalation powder (NDA 214324). Your request was received in the Center for Drug Evaluation and Research on June 1, 2022.

Per telephone conversation with Guruprasad Udapi of this office, you agreed to narrow the scope of your request and accept the Exclusivity Summary in full satisfaction of the request. The information you requested is enclosed.

The following charges may be included in a monthly invoice:

    *Reproduction: $*0.00    *Search: $*11.50   *Review: $*11.50   *Other: $*0.00    TOTAL: 23.00

The above total may not reflect final charges for this request.

**PLEASE DO NOT SEND PAYMENT UNLESS YOU RECEIVE AN INVOICE FOR THE TOTAL MONTHLY FEE.**

This concludes the response for the Center for Drug Evaluation and Research. If I can be of further assistance to you, please do not hesitate to me at 240-402-7360.

            Sincerely,

            Sheryl Douglas-McKay
            Consumer Safety Officer
            Division of Information Disclosure Policy
            Office of Regulatory Policy
            Center for Drug Evaluation and Research

If you are not satisfied with any aspect of the processing and handling of this request, please contact:

    FDA FOIA Liaison
    Office of the Executive Secretariat
    5630 Fishers Lane   Room 1050
    Rockville, MD 20857
    E-mail: FDAFOIA@fda.hhs.gov

*Enclosure: NDA 214324 Exclusivity Summary*

# EXCLUSIVITY SUMMARY

NDA #: 214324

Trade Name   Tyvaso DPI

Generic Name   treprostinil

Applicant Name   United Therapeutics Corp.

Approval Date, If Known   May 23, 2022

PART I        IS AN EXCLUSIVITY DETERMINATION NEEDED?

1. An exclusivity determination will be made for all original applications, and all efficacy supplements. Complete PARTS II and III of this Exclusivity Summary only if you answer "yes" to one or more of the following questions about the submission.

   a) Is it a 505(b)(1), 505(b)(2) or efficacy supplement?

                                                          YES ☒        NO ☐

If yes, what type? Specify 505(b)(1), 505(b)(2), SE1, SE2, SE3, SE4, SE5, SE6, SE7, SE8

   **505(b)(1)**

   b) Did it require the review of clinical data other than to support a safety claim or change in labeling related to safety? (If it required review only of bioavailability or bioequivalence data, answer "no.")

                                                          YES ☐        NO ☒

   If your answer is "no" because you believe the study is a bioavailability study and, therefore, not eligible for exclusivity, EXPLAIN why it is a bioavailability study, including your reasons for disagreeing with any arguments made by the applicant that the study was not simply a bioavailability study.

   **This NDA provides for a new dosage form of treprostinil, a dry powder for oral inhalation. The basis of approval is the safety, tolerability, and bioavailability established in two studies. The safety and tolerability study provided confirmatory efficacy information only.**

If it is a supplement requiring the review of clinical data but it is not an effectiveness supplement, describe the change or claim that is supported by the clinical data:

**N/A**

c) Did the applicant request exclusivity?

YES ☒   NO ☐

If the answer to (d) is "yes," how many years of exclusivity did the applicant request?

**3 years**

d) Has pediatric exclusivity been granted for this Active Moiety?

YES ☐   NO ☒

<u>If the answer to the above question in YES,</u> is this approval a result of the studies submitted in response to the Pediatric Written Request?

**N/A**

IF YOU HAVE ANSWERED "NO" TO <u>ALL</u> OF THE ABOVE QUESTIONS, GO DIRECTLY TO THE SIGNATURE BLOCKS AT THE END OF THIS DOCUMENT.

2. Is this drug product or indication a DESI upgrade?

YES ☐   NO ☒

IF THE ANSWER TO QUESTION 2 IS "YES," GO DIRECTLY TO THE SIGNATURE BLOCKS ON PAGE 8 (even if a study was required for the upgrade).

**PART II     FIVE-YEAR EXCLUSIVITY FOR NEW CHEMICAL ENTITIES**
(Answer either #1 or #2 as appropriate)

1. <u>Single active ingredient product</u>.

Has FDA previously approved under section 505 of the Act any drug product containing the same active moiety as the drug under consideration? Answer "yes" if the active moiety (including other esterified forms, salts, complexes, chelates or clathrates) has been previously approved, but this particular form of the active moiety, e.g., this particular ester or salt (including salts with hydrogen or coordination bonding) or other non-covalent derivative (such as a complex, chelate, or clathrate) has not been approved. Answer "no" if the compound requires metabolic conversion (other than deesterification of an esterified form of the drug) to produce an already approved active moiety.

YES ☒   NO ☐

If "yes," identify the approved drug product(s) containing the active moiety, and, if known, the NDA #(s).

**NDA#   022387**          Tyvaso inhalation solution

**NDA#   021272**          Remodulin injection

**NDA#   203496**          Orenitram extended release tablets

2. <u>Combination product</u>.

If the product contains more than one active moiety (as defined in Part II, #1), has FDA previously approved an application under section 505 containing <u>any</u> <u>one</u> of the active moieties in the drug product? If, for example, the combination contains one never-before-approved active moiety and one previously approved active moiety, answer "yes." (An active moiety that is marketed under an OTC monograph, but that was never approved under an NDA, is considered not previously approved.)

**N/A**          YES ☐          NO ☐

If "yes," identify the approved drug product(s) containing the active moiety, and, if known, the NDA #(s).

      **N/A**

IF THE ANSWER TO QUESTION 1 OR 2 UNDER PART II IS "NO," GO DIRECTLY TO THE SIGNATURE BLOCKS ON PAGE 8. (Caution: The questions in part II of the summary should only be answered "NO" for original approvals of new molecular entities.)
IF "YES," GO TO PART III.

**PART III     THREE-YEAR EXCLUSIVITY FOR NDAs AND SUPPLEMENTS**

To qualify for three years of exclusivity, an application or supplement must contain "reports of new clinical investigations (other than bioavailability studies) essential to the approval of the application and conducted or sponsored by the applicant." This section should be completed only if the answer to PART II, Question 1 or 2 was "yes."

1. Does the application contain reports of clinical investigations? (The Agency interprets "clinical investigations" to mean investigations conducted on humans other than bioavailability studies.) If the application contains clinical investigations only by virtue of a right of reference to clinical investigations in another application, answer "yes," then skip to question 3(a). If the answer to 3(a) is "yes" for any investigation referred to in another application, do not complete remainder of summary for that investigation.

YES ☐          NO ☒

IF "NO," GO DIRECTLY TO THE SIGNATURE BLOCKS ON PAGE 8.

2. A clinical investigation is "essential to the approval" if the Agency could not have approved the application or supplement without relying on that investigation. Thus, the investigation is not essential to the approval if 1) no clinical investigation is necessary to support the supplement or application in light of previously approved applications (i.e., information other than clinical trials, such as bioavailability data, would be sufficient to provide a basis for approval as an ANDA or 505(b)(2) application because of what is already known about a previously approved product), or 2) there are published reports of studies (other than those conducted or sponsored by the applicant) or other publicly available data that independently would have been sufficient to support approval of the application, without reference to the clinical investigation submitted in the application.

    (a) In light of previously approved applications, is a clinical investigation (either conducted by the applicant or available from some other source, including the published literature) necessary to support approval of the application or supplement?

        YES ☐    NO ☐

    If "no," state the basis for your conclusion that a clinical trial is not necessary for approval AND GO DIRECTLY TO SIGNATURE BLOCK ON PAGE 8:

    (b) Did the applicant submit a list of published studies relevant to the safety and effectiveness of this drug product and a statement that the publicly available data would not independently support approval of the application?

        YES ☐    NO ☐

        (1) If the answer to 2(b) is "yes," do you personally know of any reason to disagree with the applicant's conclusion? If not applicable, answer NO.

        YES ☐    NO ☐

    If yes, explain:

        (2) If the answer to 2(b) is "no," are you aware of published studies not conducted or sponsored by the applicant or other publicly available data that could independently demonstrate the safety and effectiveness of this drug product?

        YES ☐    NO ☐

    If yes, explain:

    (c)    If the answers to (b)(1) and (b)(2) were both "no," identify the clinical investigations submitted in the application that are essential to the approval:

Reference ID: 4987909

Studies comparing two products with the same ingredient(s) are considered to be bioavailability studies for the purpose of this section.

3. In addition to being essential, investigations must be "new" to support exclusivity. The agency interprets "new clinical investigation" to mean an investigation that 1) has not been relied on by the agency to demonstrate the effectiveness of a previously approved drug for any indication and 2) does not duplicate the results of another investigation that was relied on by the agency to demonstrate the effectiveness of a previously approved drug product, i.e., does not redemonstrate something the agency considers to have been demonstrated in an already approved application.

    a) For each investigation identified as "essential to the approval," has the investigation been relied on by the agency to demonstrate the effectiveness of a previously approved drug product? (If the investigation was relied on only to support the safety of a previously approved drug, answer "no.")

        Investigation #1:        YES ☐    NO ☐

    If you have answered "yes" for one or more investigations, identify each such investigation and the NDA in which each was relied upon:

    b) For each investigation identified as "essential to the approval", does the investigation duplicate the results of another investigation that was relied on by the agency to support the effectiveness of a previously approved drug product?

        Investigation #1         YES ☐    NO ☐

    If you have answered "yes" for one or more investigation, identify the NDA in which a similar investigation was relied on:

    c) If the answers to 3(a) and 3(b) are no, identify each "new" investigation in the application or supplement that is essential to the approval (i.e., the investigations listed in #2(c), less any that are not "new"):

4. To be eligible for exclusivity, a new investigation that is essential to approval must also have been conducted or sponsored by the applicant. An investigation was "conducted or sponsored by" the applicant if, before or during the conduct of the investigation, 1) the applicant was the sponsor of the IND named in the form FDA 1571 filed with the Agency, or 2) the applicant (or its predecessor in interest) provided substantial support for the study. Ordinarily, substantial support will mean providing 50 percent or more of the cost of the study.

Reference ID: 4987909

a) For each investigation identified in response to question 3(c): if the investigation was carried out under an IND, was the applicant identified on the FDA 1571 as the sponsor?

Investigation #1  !
                 !
IND #         YES ☐    ! NO ☐
                       ! Explain:

(b) For each investigation not carried out under an IND or for which the applicant was not identified as the sponsor, did the applicant certify that it or the applicant's predecessor in interest provided substantial support for the study?

(c) Notwithstanding an answer of "yes" to (a) or (b), are there other reasons to believe that the applicant should not be credited with having "conducted or sponsored" the study? (Purchased studies may not be used as the basis for exclusivity. However, if all rights to the drug are purchased (not just studies on the drug), the applicant may be considered to have sponsored or conducted the studies sponsored or conducted by its predecessor in interest.)

                                                    YES ☐     NO ☐

If yes, explain:

==================================================================
Name of person completing form: Brian Cooney, MS, PSM
Title: Regulatory Health Project Manager
Date: May 23, 2022

Name of Division Director signing form: Norman Stockbridge, MD, PhD
Title: Director, Division of Cardiology and Nephrology

Form OGD-011347; Revised 05/10/2004; formatted 2/15/05; removed hidden data 8/22/12

------------------------------------------------------------------------------------

**This is a representation of an electronic record that was signed electronically. Following this are manifestations of any and all electronic signatures for this electronic record.**

------------------------------------------------------------------------------------

/s/

------------------------------------------------------------

BRIAN T COONEY
05/23/2022 10:48:43 AM

NORMAN L STOCKBRIDGE
05/23/2022 11:42:10 AM