IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIQUIDIA TECHNOLOGIES, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES FOOD AND DRUG ADMINISTRATION, ROBERT M. CALIFF, M.D., in his official capacity as COMMISSIONER OF FOOD AND DRUGS, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, and XAVIER BECERRA, in his official capacity as SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> *Defendants*, and <br><br> UNITED THERAPEUTICS CORP., <br><br> *Intervenor-Defendant and Crossclaimant.* | Case No. 1:24-cv-2428-TJK |

**UTC'S REPLY TO FEDERAL DEFENDANTS' OPPOSITION TO MOTION TO EXPEDITE PRODUCTION OF THE ADMINISTRATIVE RECORD**

The Federal Defendants' position would guarantee inefficiency and piecemeal resolution of the parties' full dispute regarding Liquidia's eligibility for final approval of a follow-on treprostinil product. The Federal Defendants identify no practical issue that would prevent FDA from producing the Administrative Record now. Instead, they seek delay for tactical advantage, as they insist consideration of UTC's crossclaims should wait until *after* FDA has already finally approved Liquidia's application—*i.e.*, until after UTC has already suffered irreparable harm. *See* Opp. 7. The Federal Defendants' approach would inevitably force the parties and the Court into an emergency posture, all to address a purely legal dispute regarding FDA's departure from its Bundling Rule that is fully ripe for review now.

1

None of the arguments put forward by the Federal Defendants justify the impractical and inefficient path they prefer.  At a minimum, the Court should reject the Federal Defendants' request (Opp. 3 n.2) to *defer* production of the Administrative Record until after the Court rules on their forthcoming motion to dismiss.  That motion is a dispositive motion, and the Local Rules require the Federal Defendants to produce the Administrative Record when filing such a motion.  Granting an exception would have the effect of delaying merits briefing on UTC's crossclaims for at least several additional months.

## ARGUMENT

**I.    The Court Should Order Expedited Production of the Administrative Record to Promote the Efficient and Practical Resolution of the Parties' Entire Dispute.**

UTC respectfully requests the Court to order FDA to expedite production of the Administrative Record and to direct the parties to propose a briefing schedule for cross-motions on UTC's crossclaims.  This practical course of action will promote efficiency and could help avoid emergency proceedings on UTC's crossclaims once UTC's remaining exclusivity expires (or potentially sooner if UTC's exclusivity is vacated under Liquidia's challenge).

1.    The Federal Defendants argue (Opp. 4) that it "would be prejudicial" to produce the Administrative Record now, but they identify no actual prejudice.  Notably, they never address (and thus effectively concede) UTC's point that production of the Administrative Record imposes no real burden on the agency, particularly given the efforts FDA has already undertaken to compile the Administrative Record in Liquidia's closely related action.  *See* UTC Mot. 6-7.  Instead, FDA relies (Opp. 4) on its assertion that UTC's crossclaims are not ripe.  But once again, the Federal Defendants never respond to the point that, in APA cases like this one, jurisdictional challenges are routinely briefed and decided on cross-motions for summary judgment.  *See* UTC Mot. 7 (collecting decisions).  Proceeding in that way preserves the Federal Defendants' ability to raise

jurisdictional objections to UTC's crossclaims without unduly delaying resolution of the merits of those claims if the Court concludes that the Federal Defendants are wrong.

The Federal Defendants object (Opp. 4) that UTC would gain an "unfair advantage in future litigation" from accessing the Administrative Record now, but this claim of prejudice is pure invention. FDA already provided to UTC the agency's 26-page letter decision explaining FDA's rationale for "depart[ing]" from its Bundling Rule to permit Liquidia's NDA amendment. ECF No. 53-1, Ex. A at 1 (Case No. 24-cv-484) (Aug. 16, 2024 General Advice Letter to United Therapeutics Corporation); UTC Cross-Compl. ¶ 12, ECF No. 30. UTC is not looking for a sneak peek into FDA's decision-making to prepare for possible future litigation; it already has FDA's legal reasoning announcing the agency's definitive rejection of UTC's Bundling Rule challenge. UTC requests only that FDA produce the Administrative Record so that UTC's crossclaims can proceed to full merits briefing, since APA claims are reviewed on "the whole record." *See* 5 U.S.C. § 706. FDA suffers no cognizable prejudice from a requirement to compile the record underlying a decision that it has already made and disclosed to UTC.

Finally, although this motion to expedite is not the proper occasion to fully address the Federal Defendants' ripeness challenge, it is worth noting that the Federal Defendants' cursory argument on this point ignores relevant authority. The Federal Defendants rely exclusively on *Pfizer Inc. v. Shalala*, 182 F.3d 975 (D.C. Cir. 1999), but the D.C. Circuit has since rejected a ripeness argument materially identical to theirs—also premised on *Pfizer v. Shalala*—based on reasoning that is directly applicable here. In *Teva Pharmaceuticals USA, Inc. v. Sebelius*, 595 F.3d 1303 (D.C. Cir. 2010), the D.C. Circuit held that the plaintiff's purely legal challenge to FDA's decision was ripe even before final approval given "[t]he absence of any colorable factual dispute," as the agency made "no suggestion that any possible deficiency or uncertainty" with

3

plaintiff's application "could thwart final approval." *Id.* at 1309. Likewise here, FDA has addressed all the potential impediments to Liquidia's final approval, including UTC's challenge based on the Bundling Rule, leaving no open issues to prevent final approval once UTC's 3-year exclusivity expires on May 23, 2025. Compl. ¶ 80, ECF No. 1; UTC Cross-Compl. ¶ 12; FDA-001292-001330. As in *Teva*, the Federal Defendants rely on a pure technicality for their ripeness argument: they identify nothing that could change in those six months that would have any impact on UTC's crossclaims or inform this Court's review. The Court should follow *Teva* and reject the Federal Defendants' preferred approach—"delaying review until the agency has made its technically tentative decisions final"—which, for no good reason, would put this Court "in an awkward bind" of needing to "miraculously manage to resolve[] the merits issue" of UTC's crossclaims "more or less instantaneously." *Teva*, 595 F.3d at 1311.

2.   The Federal Defendants argue (Opp. 5) that it would be "impractical and unreasonable" to brief UTC's crossclaims "in parallel" to Liquidia's claims. But they mischaracterize UTC's request. Contrary to the Federal Defendants' caricature, UTC is not asking the Court to order briefing on UTC's crossclaims on the exact same schedule as the briefing on Liquidia's claims. That is obviously impossible, since the parties have already filed their opening cross-motions for summary judgment on those claims. Rather, UTC urges that briefing on its crossclaims should proceed in a prompt fashion rather than deciding these two overlapping actions seriatim, as the Federal Defendants evidently prefer. If briefing on the crossclaims proceeds now, then UTC expects briefing could be completed around the time the hearing is currently scheduled on Liquidia's claims (December 5, 2024). This would provide the Court with the ability to schedule a hearing on the crossclaims before issuing a decision on Liquidia's claims, if the Court determines that such a hearing is appropriate and would aid in efficient resolution of the entire

4

controversy. By contrast, under the Federal Defendants' approach, the parties may not even *begin* briefing on UTC's crossclaims until well after the December 5, 2024 hearing. If the Court ultimately agrees with UTC that its crossclaims should be decided at the same time as Liquidia's claims, then there would be no practical way to do so without delaying resolution of Liquidia's case—an outcome that UTC's approach would avoid.

3. The Federal Defendants next object (Opp. 5-6) to the fact that UTC filed crossclaims at all, which they claim impermissibly enlarge the issues before the Court. That charge is baseless. "When a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party." *Schneider v. Dumbarton Devs., Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985). In particular, "Federal Rule of Civil Procedure 13 does not distinguish between intervenors and other parties with respect to their ability to assert counterclaims or cross-claims." *City of Jersey City v. Consol. Rail Corp.*, 968 F. Supp. 2d 302, 305 (D.D.C. 2013), *aff'd*, No. 13-7175, 2014 WL 1378306 (D.C. Cir. Feb. 19, 2014).[1]

UTC's assertion of crossclaims here promotes efficiency, and the Federal Defendants' contrary arguments are misleading. The Federal Defendants observe (Opp. 6) that the crossclaims challenge "an entirely different agency action" than Liquidia challenges, but they ignore the clear overlap. Liquidia alleges it is entitled to immediate final approval of its 505(b)(2) application and challenges FDA's decision that final approval is blocked until May 23, 2025 by UTC's 3-year

---

[1] *See also Ass'n of Contracting Plumbers of the City of N.Y. v. Loc. Union No. 2 United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Indus.*, 841 F.2d 461, 467 (2d Cir. 1988) ("Once the right to intervene is established, the intervenor's status is equivalent to that of a party."); *Wilderness Watch v. Jackson*, No. 23-cv-295, 2023 WL 8018794, at *3 (D. Idaho Nov. 20, 2023) ("[O]nce intervention has been granted the intervener becomes a 'party', within the meaning of the Rules, 'entitled to litigate fully on the merits.'" (citations omitted)); *Chao v. Loc. 1104 Commc'ns Workers of Am.*, No. 06-cv-5896, 2007 WL 1231616, at *3 (E.D.N.Y. Apr. 26, 2007).

exclusivity. UTC, in turn, challenges FDA's decision—issued contemporaneously with FDA's exclusivity determination—that Liquidia's application is otherwise eligible for final approval because Liquidia's amendment to the application was proper. The two claims are inextricably related: indeed, the relief Liquidia seeks of immediate final approval of its 505(b)(2) application, Compl. Prayer for Relief (B), would be foreclosed if UTC succeeds on its crossclaims. It was thus entirely proper for UTC to proceed in a manner that allows the Court to decide together all the legal questions bearing on whether Liquidia's 505(b)(2) application is eligible for final approval.

4. Finally, the Federal Defendants insist (Opp. 6-7) that UTC would not be prejudiced by delaying resolution of its crossclaims, but that assertion ignores reality. To begin, the Federal Defendants argue both that the Court should uphold the exclusivity decision that Liquidia challenges or, if it finds any prejudicial error, remand to FDA for further consideration. Of course, UTC agrees with the Federal Defendants on these points, but the relief Liquidia seeks is not so limited: it requests "immediate, full approval of the Yutrepia NDA." Compl. Prayer for Relief (B). At this early stage in the proceedings, UTC must address the relief Liquidia seeks, not its own (or the Federal Defendants') assessment of the appropriate outcome.

As a fallback, the Federal Defendants blithely suggest (Opp. 7) it would be good enough for UTC to "seek a preliminary injunction *after* FDA approves" Liquidia's 505(b)(2) application. This is the same argument the Federal Defendants advanced to Judge Bates, and he correctly rejected it by ordering FDA to provide advance notice to UTC of any decision on Liquidia's application. ECF No. 18 (Case No. 24-cv-484). As UTC has explained, Liquidia has repeatedly stated that it will launch its product immediately once FDA grants final approval to Liqduidia's product, and then it will be too late to prevent UTC from suffering irreparable harm. The final approval would vitiate UTC's statutory right to a stay while it continues to pursue patent litigation

against Liquidia, and the launch would instantly cause irreversible changes to the market for treprostinil. UTC Cross-Compl. ¶¶ 7, 74. UTC would need to seek an immediate TRO to mitigate the harm. The Federal Defendants may perceive tactical advantage from forcing UTC to litigate its claims in an emergency posture. But that process would impose unnecessary burdens on the Court and the parties, detracting from the orderly administration of justice.

## II. At a Minimum, the Court Should Deny FDA's Request To Defer Production of the Administrative Record.

The Federal Defendants not only oppose UTC's motion to expedite production of the Administrative Record, but they also state that they intend to seek *to defer* production of the record under Local Civil Rule 7(n)(1). UTC opposes any such delay.

Under the relevant rule, "unless otherwise ordered by the Court," FDA must:

> file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a *dispositive motion*, whichever occurs first.

Local Civ. R. 7(n)(1) (emphasis added). A motion to dismiss falls comfortably within the ordinary meaning of "dispositive motion." *See, e.g.*, *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1215 (D.C. Cir. 1997) ("The term 'dispositive motion' includes a motion that, if granted, would result either in the determination of a particular claim on the merits *or elimination of such a claim from the case*." (emphasis added)); *SAI v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99, 104 (D.D.C. 2015) ("The case is before the Court on three dispositive motions," two of which were "a motion to dismiss"); *Motion*, Black's Law Dictionary (12th ed. 2024) (defining "dispositive motion" to include "a motion that, if granted, results in a judgment on the case as a whole, as with a motion for summary judgment *or a motion to dismiss*" (emphasis added)). Nevertheless, the Federal Defendants assert (Opp. 3 & n.2) that their forthcoming motion to dismiss "appears not to trigger a deadline for the administrative record" because their motion

supposedly will not "rely upon the record." But recognizing that their position is dubious, the Federal Defendants report that they intend to ask the Court to excuse FDA from producing the Administrative Record until after "the motion to dismiss is decided." Opp. 3 n.2.[2]

The Court should decline the Federal Defendants' invitation. The agency's obligation to produce the Administrative Record is triggered by filing a "dispositive motion," irrespective of the agency's self-interested assessment that *its* motion can be resolved without that record. Nor is it likely that the Federal Defendants' assessment is even correct: UTC expects that the Federal Defendants will make representations in their motion about the status of FDA's decision-making process, representations on which the record could well shed light. And granting a deferral here would be prejudicial as it would likely lead to several months of delay, making it highly unlikely that the Court would be able to resolve UTC's crossclaims before the end of UTC's 3-year exclusivity on May 23, 2025 (or sooner if Liquidia were to prevail on its challenge). Ending the Federal Defendants' pointless stalling now will save the Court and the parties from having to rush the proceedings later.

## CONCLUSION

UTC respectfully requests that the Court expedite the filing of the Administrative Record and direct the parties to propose a briefing schedule for dispositive motions regarding UTC's crossclaims.

---

[2] Contrary to the Federal Defendants' insinuation (Opp. 3-4), UTC never endorsed the Federal Defendants' reading of the Local Rule. Rather, UTC merely indicated that it understood (correctly) that it was the Federal Defendants' position that FDA could defer production of the Administrative Record until after the motion to dismiss was decided. *See* Mot. 5. UTC understood this from FDA's course of action in the earlier litigation challenging the Bundling Rule, and UTC made clear there that a dispositive motion could not be granted before FDA produced the Administrative Record. ECF No. 39 at 39 (Case No. 24-cv-484).

October 18, 2024                                                                    Respectfully submitted.

|  |  |
|---|---|
| Shaun R. Snader (D.C. Bar No. 492231)<br>UNITED THERAPEUTICS CORPORATION<br>1735 Connecticut Ave. NW, 2nd Floor<br>Washington, DC 20009<br>(202) 304-1701<br><br>Douglas Carsten (admitted *pro hac vice*)<br>Art Dykhuis (admitted *pro hac vice*)<br>MCDERMOTT WILL & EMERY LLP<br>18565 Jamboree Road, Suite 250<br>Irvine, CA 92615<br>(949) 851-0633<br><br>Adam W. Burrowbridge (D.C. Bar No. 1001783)<br>MCDERMOTT WILL & EMERY LLP<br>500 North Capitol Street, NW<br>Washington, DC 20001<br>(202) 756-8797<br><br>Gerard J. Cedrone (D.D.C. Bar No. MA0019)<br>GOODWIN PROCTER LLP<br>100 Northern Avenue<br>Boston, MA 02210<br>(617) 570-1000 | /s/ *Brian T. Burgess*<br>William C. Jackson (D.C. Bar. No. 475200)<br>William M. Jay (D.C. Bar No. 480185)<br>Brian T. Burgess (D.C. Bar No. 1020915)<br>GOODWIN PROCTER LLP<br>1900 N Street, NW<br>Washington, DC 20001<br>(202) 346-4000<br><br>*Attorneys for Intervenor-Defendant and Cross-Claimant United Therapeutics Corporation* |

## CERTIFICATE OF SERVICE

Pursuant to LCvR 5.3, I hereby certify that, on October 18, 2024, I electronically filed the foregoing document with the Clerk of the Court of the U.S. District Court for the District of Columbia by using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served via the CM/ECF system.

October 18, 2024                                        Respectfully submitted.

                                                        /s/ *Brian T. Burgess*
                                                        Brian T. Burgess