UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIQUIDIA TECHNOLOGIES, INC.,<br><br>*Plaintiff and Intervenor-Cross-Defendant*,<br><br>v.<br><br>FOOD AND DRUG ADMIN., *et al.*,<br><br>*Defendants and Cross-Defendants*,<br><br>and<br><br>UNITED THERAPEUTICS CORPORATION,<br><br>*Intervenor-Defendant and Cross-Claimant*. | Case No. 1:24-cv-02428-TJK |

**Reply Memorandum in Support of Federal Defendants' Motion to Dismiss**

PATRICIA ZETTLER
Deputy General Counsel
Department of Health and Human
  Services

MARK RAZA
Chief Counsel

WENDY S. VICENTE
Deputy Chief Counsel for Litigation

DANLI SONG
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Avenue
Bldg. 32, Room 4397
Silver Spring, MD 20993

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
  General
BURDEN H. WALKER
Acting Deputy Assistant Attorney
General

AMANDA N. LISKAMM
Director
LISA K. HSIAO
Senior Deputy Director
HILARY K. PERKINS
Assistant Director
NOAH T. KATZEN
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044-0386
(202) 305-2428
(202) 514-8742 (fax)
Noah.T.Katzen@usdoj.gov

**TABLE OF CONTENTS**

| | |
|---|---|
| **INTRODUCTION** | 1 |
| ARGUMENT | 3 |
|    I.   UTC Lacks Standing | 3 |
|       A.   Loss of a 30-month stay is not fairly traceable to FDA's actions | 3 |
|       B.   Loss of a 30-month stay is not redressable | 6 |
|    II.   UTC's Crossclaims Are Not Ripe | 7 |
|    III.   UTC Has An Adequate Alternative Remedy | 9 |
|    IV.   UTC's Crossclaims Are Not Authorized | 11 |
| **CONCLUSION** | 13 |

## TABLE OF AUTHORITIES

**CASES**

*Asher v. Rack Conveyor Installation, Inc.*,
 375 F. App'x 576 (6th Cir. 2010) .................................................................................... 12

*Avadel CNS Pharms., LLC v. Becerra*,
 638 F. Supp. 3d 23 (D.D.C. 2022) .................................................................................. 10

*Bennett v. Spear*,
 520 U.S. 154 (1997) ........................................................................................................... 5

*CSL Plasma Inc. v. U.S. Customs & Board Protection*,
 33 F.4th 585 (D.C. Cir. 2022) ........................................................................................... 5

*Double R Ranch Tr. v. Nedd*,
 284 F. Supp. 3d 21 (D.D.C. 2018) .................................................................................... 5

*FDA v. Alliance for Hippocratic Medicine*,
 602 U.S. 367 (2024) ........................................................................................................... 5

*Int'l Paving Systems, Inc. v. Van-Tulco, Inc.*,
 866 F.Supp. 682 (E.D.N.Y. 1994) .................................................................................. 12

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ........................................................................................................... 4

*Mitchell v. United States*,
 930 F.2d 893 (Fed. Cir. 1991) ........................................................................................ 10

*Opal Manufacturing Company, Ltd. v. UMC Industries Inc.*,
 553 F. Supp. 131 (D.D.C. 1982) ............................................................................... 11, 12

*Pfizer v. Shalala*,
 182 F.3d 975 (D.C. Cir. 1999) .......................................................................................... 7

*Swartz v. Di Carlo*,
 No. 1:12-cv-3112, 2013 WL 4012742 (N.D. Ohio Aug. 6, 2013) ................................. 12

*Teva Pharms. USA, Inc. v. Sebelius*,
 595 F.3d 1303 (D.C. Cir. 2010) ........................................................................................ 7

*UTC v. Liquidia Techs.*,
 Civ. A. No. 23-0975 (RGA) (D. Del. Jan. 22, 2024) ....................................................... 6

*Van Hollen v. FEC*,
 291 F.R.D. 11 (D.D.C. 2013) .......................................................................................... 13

*Vinson v. Wash. Gas Light Co.*,
 321 U.S. 489 (1944) ......................................................................................................... 13

*Wash. Legal Found. v. Alexander*,
  984 F.2d 483 (D.C. Cir. 1993) .................................................................................................. 10

**STATUTES**

21 U.S.C. § 355(c)(3)(C) ........................................................................................................ 5, 6, 8

**RULES**

Fed. R. Civ. P. 13(g) ................................................................................................................ 11, 12

**INTRODUCTION**

As Federal Defendants explained in their Motion to Dismiss, ECF No. 71-1 (FDA MTD), United Therapeutics Corporation's (UTC's) crossclaims should be dismissed for four reasons. UTC's response, ECF No. 81 (UTC Opp.), rebuts none of them.

*First*, UTC's crossclaims should be dismissed for lack of subject matter jurisdiction because UTC lacks standing. UTC brought its crossclaims to vindicate its alleged interest in obtaining another 30-month stay of approval of Liquidia Technologies, Inc. (Liquidia)'s amended new drug application for Yutrepia.[1] But UTC's response to Federal Defendants' motion confirms that it is speculative whether the U.S. Food and Drug Administration (FDA) deprived UTC of a 30-month stay, as well as whether any judicial relief would lead to UTC obtaining such a stay. UTC's theory of standing therefore fails the Article III requirements of causation and redressability, and so its crossclaims must be dismissed.

*Second*, the Court lacks subject matter jurisdiction for the additional reason that UTC's claims are not ripe. FDA cannot approve Liquidia's application before May 23, 2025, at the earliest, due to UTC's unexpired period of exclusivity for Tyvaso DPI. For that reason, UTC suffers no hardship in deferred review. To be sure, the D.C. Circuit has recognized that a pharmaceutical company may be able to sue FDA preemptively to block a competitor's approval where necessary to protect a fleeting first-mover advantage. But unlike such a plaintiff, UTC's ability to obtain a 30-month stay will be the same if review

---

[1] As explained in Federal Defendants' opening brief, UTC has previously obtained a 30-month stay of the effectiveness of any FDA approval of Liquidia's application, but that stay has now expired. *See* FDA MTD 4 fn. 2.

is deferred as it is now. And UTC's challenge to FDA's acceptance of Liquidia's amendment will not be fit for review unless and until the agency approves Liquidia's application—at which time UTC can bring *all* challenges it might have to that approval.

*Third*, UTC lacks a cause of action under the Administrative Procedure Act (APA) because it has an adequate alternative remedy in its patent litigation. There is no question that the district court hearing UTC's patent infringement claims against Liquidia has the power to enter a preliminary injunction keeping Liquidia's drug off the market until those patent infringement claims can be adjudicated. That is the same genre of relief UTC seeks in this case and thus, under D.C. Circuit precedent, an adequate alternative remedy. UTC's arguments regarding differences between a preliminary injunction in its patent infringement litigation and the relief it seeks in this case do not undermine that conclusion.

*Finally*, UTC's crossclaims are not authorized by Federal Rules of Civil Procedure 13(g) and 24. UTC insists that it is a "coparty" of Federal Defendants for purposes of Rule 13(g) because it was admitted to this proceeding as a "defendant" and thus has "like status." But Federal Defendants and UTC do not have "like status" because Liquidia asserts claims against only Federal Defendants, not UTC. And UTC's crossclaims also exceed the permissible scope of its intervention under Rule 24 by challenging an agency action not at issue in Liquidia's underlying suit.

For these reasons, the Court should dismiss UTC's crossclaims.

## ARGUMENT

I. **UTC Lacks Standing**

UTC's crossclaims challenge the particular mechanism by which Liquidia has sought approval for the indication for pulmonary hypertension associated with interstitial lung disease (PH-ILD). According to UTC, FDA should have rejected Liquidia's amendment to its pending Yutrepia application proposing to add that indication. Had it done so, UTC contends, Liquidia would have filed a standalone application seeking approval for the PH-ILD indication. Crossclaims ¶ 13. And that application—UTC further alleges—would have contained a Paragraph IV certification to the '327 patent, thereby enabling UTC to obtain an alleged "statutory right" to a 30-month stay of approval of the application for the PH-ILD indication. Crossclaims ¶ 13. But as Federal Defendants explained in their opening brief, UTC lacks standing because, even assuming UTC's alleged loss of a 30-month stay is an injury in fact, that loss is not (1) fairly traceable to FDA's actions or (2) redressable by judicial relief. FDA MTD 10-12.

A. **Loss of a 30-month stay is not fairly traceable to FDA's actions**

UTC's theory of causation rests on an assertion that it would obtain a 30-month stay absent FDA's acceptance of Liquidia's amendment:

> If FDA had [rejected Liquidia's amendment] when Liquidia submitted [that] amendment in September 2023, Liquidia's request for approval of the PH-ILD indication would have proceeded by way of a separate application, and UTC's timely suit for patent infringement following Liquidia's paragraph IV certification would have triggered an automatic 30-month stay.

UTC Opp. 25. But that theory is too speculative to support Article III standing for two reasons. FDA MTD 11-12.

*First*, UTC can merely speculate that Liquidia would have filed a standalone PH-ILD-only application if FDA had rejected its amendment. Nothing in the Federal Food, Drug, and Cosmetic Act or its implementing regulations would have required Liquidia to do that. Instead, Liquidia would have had an avenue toward approval that would not have triggered a 30-month stay: await approval of its application for the pulmonary arterial hypertension (PAH) indication, and then—after receiving approval—file a supplemental application seeking approval for the PH-ILD indication. Indeed, that is precisely what Liquidia has said it would do if its amendment were rejected. FDA MTD, Ex. 1 at 56.

Ultimately, UTC acknowledges that Liquidia would have had this option, and that thus FDA could not actually have required Liquidia to submit an application that would have triggered a 30-month stay. UTC Opp. 28. Yet UTC tries to rescue its theory of standing by contending that it would have benefited from a rejection of Liquidia's amendment, even if that rejection did not result in a 30-month stay.[2] *Id.* But UTC cannot

---

[2] In its Opposition, UTC asserts that—separate and apart from the loss of a 30-month stay—it "also has standing because it faces an imminent threat of future harm—the irreversible erosion of UTC's market position." UTC Opp. 30-31. It accuses Federal Defendants of "ignore[ing] this additional basis for standing." UTC Opp. 31. Tellingly, however, UTC does not cite to any paragraph in its crossclaims alleging such a theory. UTC therefore has not met its burden on this theory. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

decouple its alleged injury in fact from causation in this way. The question for Article III standing purposes is whether the specific injury UTC asserts—loss of a 30-month stay—is fairly traceable to what FDA did. *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 385 (2024) ("[T]o establish causation, the plaintiff must show a predictable chain of events leading from the government action *to the asserted injury*[.]") (emphasis added). And the answer is no: UTC lacks a 30-month stay because Liquidia has not submitted a standalone application for the PH-ILD indication and Liquidia has said it would not do so. UTC's claimed injury thus depends on speculations about the reactions of a third party which UTC has not shown to be "sufficiently predictable." *Id.* at 383 (where an alleged injury depends on a third party's intervening "react[ion] to the government action," the plaintiff must show the reaction was "sufficiently predictable."); *see Double R Ranch Tr. v. Nedd*, 284 F. Supp. 3d 21, 30 (D.D.C. 2018) ("In cases where an injury turns on third party conduct, standing is ordinarily substantially more difficult to establish.") (cleaned up).

*Second*, even assuming Liquidia would have submitted a standalone PH-ILD application, that would have resulted in a 30-month stay *only* if it had done so *after* UTC submitted the '327 patent for listing on November 28, 2023. FDA MTD 11-12. If Liquidia

---

In any event, UTC does not explain how its new theory of standing is within the zone of interests of any statute relevant to this case. "When a claim arises under the APA, the zone of interests test requires considering the 'substantive provisions' of the underlying statute, the 'alleged violations of which serve as the gravamen of the complaint.'" *See CSL Plasma Inc. v. U.S. Customs & Board Protection*, 33 F.4th 585, 589 (D.C. Cir. 2022) (quoting *Bennett v. Spear*, 520 U.S. 154, 175 (1997)). Here, the gravamen of UTC's crossclaims is that FDA's acceptance of Liquidia's amendment deprives UTC of a 30-month stay under 21 U.S.C. § 355(c)(3)(C). It identifies no relevant statute whose substantive provisions protect any interest UTC might have other than its interest in a 30-month stay.

had resubmitted its amendment as a standalone application *before* that date, the application could not have given rise to a 30-month stay. *Id.*; 21 U.S.C. § 355(c)(3)(C). UTC's assertion that a standalone application would have resulted in a 30-month stay therefore depends on speculation about the timing of Liquidia's hypothetical submission.

To get around this problem, UTC changes its theory of which patent would have triggered the 30-month stay. It argues that a standalone application filed *before* the '327 patent was listed would have contained a Paragraph IV certification to the '793 patent, thereby triggering a 30-month stay when UTC timely sued for infringement of the '793 patent. UTC Opp. 27. Perhaps. But any such stay would have vanished when UTC's claims asserting the '793 patent were dismissed on January 22, 2024. *See* Stipulation, *UTC v. Liquidia Techs.*, Civ. A. No. 23-0975 (RGA) (D. Del. Jan. 22, 2024). Even if UTC had obtained a stay based on the '793 patent, Liquidia's product has not been approved and thus was not on the market at any point before January 22, 2024. Thus, UTC cannot establish any injury from failing to obtain a stay based on the '793 patent. So it is a moot point whether a standalone PH-ILD application would have triggered a 30-month stay based on the '793 patent.

### B. Loss of a 30-month stay is not redressable

For similar reasons, UTC fails to plausibly allege that judicial relief would redress its alleged loss of a 30-month stay. If this Court were to order FDA to reject Liquidia's amendment, UTC would not obtain a 30-month stay unless Liquidia submitted a standalone PH-ILD application—which (again) Liquidia has said it would not do. There

is therefore no relief this Court could order that would make it likely that UTC would obtain a 30-month stay.

## II. UTC's Crossclaims Are Not Ripe

In any event, UTC's challenge to FDA's acceptance of Liquidia's amendment is not ripe. UTC will not experience any hardship from its alleged loss of a 30-month stay unless and until FDA approves Liquidia's application—which cannot take place for at least several more months. And UTC's challenge will not become fit for review until approval, if it occurs, at which time this Court can hear all challenges UTC might bring against an approval. By contrast, allowing UTC to bring its challenge to FDA's acceptance of Liquidia's amendment now would risk piecemeal litigation. *See Pfizer v. Shalala*, 182 F.3d 975, 980 (D.C. Cir. 1999).

UTC resists this conclusion, relying principally on *Teva Pharms. USA, Inc. v. Sebelius*, 595 F.3d 1303 (D.C. Cir. 2010). But it ignores or downplays fundamental differences between that case and this one.

*First*, as UTC must concede, *Teva* involved a distinct hardship—loss of a first-mover advantage—not present here. UTC Opp. 23. UTC fails to grapple with FDA's arguments regarding why UTC's claimed loss is different from the loss of a first-mover advantage, dismissing it as a "distinction without a difference." *Id.* In *Teva*, the plaintiff alleged that it was entitled to a statutorily-granted 180-day period of exclusivity, which would begin with the first commercial marketing of the product. Thus, deferring review in *Teva* could have permanently and irrevocably reduced the 180-day exclusivity period to which the plaintiff claimed to be entitled.

7

By contrast, UTC's ability to obtain a 30-month stay for a new application (should Liquidia choose to file one) will be exactly the same if it prevails in a post-approval challenge as it would be if UTC prevails now. In either case, it is at best speculative whether Liquidia would submit a standalone PH-ILD-only application triggering a 30-month stay. *See supra* pp. 4-7. But even assuming that Liquidia were to file a standalone application that would trigger a stay, that stay would last 30 months from whenever Liquidia provides notice of a paragraph IV certification associated with that application. 21 U.S.C. § 355(c)(3)(C). Thus, UTC's claimed loss differs from the loss of "first-mover advantage" claimed in *Teva*.

*Second*, on fitness, UTC ignores that early adjudication here presents a risk of piecemeal litigation not present in *Teva*. In *Teva*, the plaintiff's claim went solely to the *timing* of approval. The plaintiff did not challenge a competitor's application as unapprovable, and therefore there was no risk of claims challenging approvability being litigated on a piecemeal basis. Here, by contrast, if UTC prevails on its crossclaims, Liquidia's amended application will not be approvable in its present form. Allowing UTC to bring this challenge now would permit it to challenge the approvability of Liquidia's amended application on a single ground, reserving any other possible challenges to approvability for later. Under *Pfizer*, that threat of piecemeal litigation renders UTC's challenge unfit for review unless and until Liquidia's application is approved.

### III. UTC Has An Adequate Alternative Remedy

As Federal Defendants explained in their opening brief, UTC has no cause of action under the APA because its patent litigation against Liquidia provides an adequate alternative remedy. Specifically, UTC may ask the district court hearing its patent suit to issue a preliminary injunction against Liquidia prohibiting Liquidia from marketing Yutrepia until UTC's patent infringement claims can be decided. That relief is of the "same genre" as the 30-month stay that UTC seeks in its APA suit against FDA.

In response, UTC focuses on differences in the legal theories underpinning its patent infringement claims and its APA claims against FDA. *See, e.g.*, UTC Opp. 33 ("In this case, UTC challenges the legality of FDA's decision to accept Liquidia's amendment in violation of the agency's own rules, policies, and precedents—not whether Liquidia's product would infringe any UTC patents.") (citation omitted); *id.* ("The relevant wrongdoing is by FDA, which departed from its own policies to deprive UTC of a statutory right. UTC cannot vindicate that right by pursuing patent litigation against Liquidia."). In the same vein, UTC notes that to obtain a preliminary injunction in the patent litigation, it would have to make various showings that it would not have to make to prevail in its APA suit against FDA. *See, e.g.*, *id.* at 34 ("Because patent litigation is typically fact- and discovery-intensive, early preliminary injunction motions are highly burdensome for both the parties and the court. In a preliminary injunction proceeding, a patent holder like UTC shoulders the burden of showing that it is likely to succeed on the

merits before it has fully developed the record in addition to satisfying the other equitable factors.").

But none of this is relevant to whether UTC's patent litigation affords it an adequate alternative remedy. A remedy may be "adequate" for purposes of 5 U.S.C. § 704 "even if that remedy would have no effect upon the challenged agency action." *Wash. Legal Found. v. Alexander*, 984 F.2d 483, 486 (D.C. Cir. 1993). Nor does it matter that the alternative remedy is against a third party, or that the relief may be less effective than APA relief. Nor does it matter that the plaintiff would not actually be able to obtain the alternative relief. *Mitchell v. United States*, 930 F.2d 893, 897 (Fed. Cir. 1991) ("[T]he question posed by APA Section 704 is whether [there are] adequate remedies, not whether [a particular plaintiff] will be entitled to receive these remedies."). All that matters is whether the alternative relief is "of the 'same genre'" as the relief sought in the APA suit. *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009).

For example, in *Avadel CNS Pharms., LLC v. Becerra*, 638 F. Supp. 3d 23 (D.D.C. 2022), the plaintiff challenged FDA's decision to require a certification to the intervenor-defendant's patent. Although the plaintiff could file a counterclaim in its patent litigation challenging the listing of the underlying patent, the patent litigation did not provide a forum for the plaintiff's argument that no certification was required even if the patent was properly listed. 638 F. Supp at 33. Nonetheless, the district court held that the counterclaim provided an adequate alternative remedy: differences in legal theories notwithstanding, the patent litigation was an alternative means of obtaining relief of the "same genre" sought in the APA challenge. *Id.* at 34 ("[T]he adequate remedy inquiry

10

focuses on the *outcome* sought by the movant rather than the questions they raise in their pleadings.") (emphasis added); *see* FDA MTD 14.

At bottom, UTC wants a court order designed to keep Yutrepia for PH-ILD off the market until UTC's patent claims can be fully litigated. There is none better positioned to provide that relief—and none that can better judge the need for that relief—than the district court adjudicating the patent litigation. Because that court has authority to enter relief of the same genre that UTC seeks here, UTC has no right to relief under the APA.

## IV. UTC's Crossclaims Are Not Authorized

UTC's crossclaims are also improper because they do not comport with Federal Rules of Civil Procedure 13(g) and 24. Contrary to UTC's mischaracterization, the question is not whether an intervenor, as a general matter, has a "right to pursue crossclaims." UTC Opp. 36. The question is whether the particular crossclaims UTC has chosen to assert comport with the Federal Rules of Civil Procedure. They do not. *See* FDA MTD 15-17.

*First*, UTC—like any other party—can assert crossclaims only against a "coparty." Fed. R. Civ. P. 13(g). The question, therefore, is whether a defendant against whom the plaintiff asserts claims (here, FDA) is a "coparty" of an intervenor-defendant against whom *no* claims are asserted (here, UTC). *See* FDA MTD 16 ("Here, Liquidia seeks no relief against UTC."). In *Opal Manufacturing Company, Ltd. v. UMC Industries Inc.*, 553 F. Supp. 131 (D.D.C. 1982), this Court dismissed a crossclaim by a defendant against an intervenor-defendant on other grounds, but observed that even if those other grounds were mooted, the defendant would not be able to reassert them. *Id.* at 133 & n.3. As the

Court explained, "it appears . . . that this cross-claim would not be proper . . . because [the intervenor-defendant] was not [the defendant's] co-party within the meaning of Fed. R. Civ. P. Rule 13(g) *in that no claim had been filed against it*." *Id.* at 133 n.3 (emphasis added). While UTC treats *Opal* dismissively, it cites no contrary authority from within this Circuit addressing.

Nor is *Opal* an outlier. As UTC acknowledges, other courts have held that the term "coparties" is limited to parties that are of "like status." *Int'l Paving Systems, Inc. v. Van-Tulco, Inc.*, 866 F. Supp. 682, 695 (E.D.N.Y. 1994); *see also* 6 Wright & Miller, Fed. Prac. & Proc. Civ. § 1431 (3d ed. 2024) (arguing that this rule "best reflects the original intent of the crossclaim provision"). UTC assumes that parties necessarily have "like status" if they are labeled "defendant," but that is not so. *Int'l Paving Systems*, 866 F. Supp. at 695 ("Because a defendant and third- or fourth-party defendant do not share 'like status,' they are not generally considered to be 'co-parties' within the meaning of Rule 13(g)."). And once one sets aside labels, UTC proposes no alternative rule for determining whether parties share "like status" other than the one *Opal* proposes: a defendant against whom the plaintiff asserts claims is a "co-party" only of other parties against whom the plaintiff asserts claims. *See Asher v. Rack Conveyor Installation, Inc.*, 375 F. App'x 576, 579 (6th Cir. 2010) ("The district court concluded that 'Unarco and RCI do not share "like status," as RCI has not been sued by the Plaintiffs and is merely a third-party defendant to the action, while Unarco is an original defendant and co-party of the Third-Party Plaintiff Atlas.'"); *Swartz v. Di Carlo*, No. 1:12-cv-3112, 2013 WL 4012742, at *3 (N.D. Ohio Aug. 6, 2013) ("As

neither Aultman nor Emeritus has been named a defendant in the main underlying claim, defendant Di Carlo's pleading is not a 'crossclaim.'").

*Second*, while an intervenor may, of course, assert crossclaims within the scope of its intervention under Rule 24, *see Van Hollen v. FEC*, 291 F.R.D. 11, 13 (D.D.C. 2013), it must nevertheless adhere to the rule that "an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration in the nature of the proceeding." *Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 498 (1944). Here, the proceeding—as it stood when UTC entered it—was a challenge to FDA's Exclusivity Decision. UTC's crossclaims altered the nature of that proceeding by challenging a different agency action—FDA's acceptance of Liquidia's amendment. Nothing about Liquidia's challenge to the Exclusivity Decision turns on whether FDA's acceptance of the amendment adding the PH-ILD indication was proper. UTC's crossclaims therefore impermissibly exceed the scope of its intervention under Rule 24.

## CONCLUSION

For the foregoing reasons, the Court should grant Federal Defendants' Motion to Dismiss.

DATED: December 16, 2024

Respectfully submitted,

/s/Noah T. Katzen
NOAH T. KATZEN
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
PO Box 386
Washington, DC 20044-0386
(202) 514-8742 (fax)
Noah.T.Katzen@usdoj.gov

14